UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:08-cr-00170-SEB-TAB |
| | ) | |
| JOHN NORRIS, | ) -01 | |
| | ) | |
| Defendant. | ) | |

## ENTRY GRANTING MOTION FOR COMPASSIONATE RELEASE

Pending before the Court is John Norris's motion for compassionate release filed pursuant to § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Mr. Norris seeks the reduction of his sentence to time served and his immediate release. He has expressed his willingness to have conditions added to his five-year term of supervised release if he is released from custody.

Mr. Norris filed his *pro se* motion on May 26, 2020. Dkt. 87. Counsel was appointed and filed a brief in support on July 28, 2020. Dkt. 93. The Government opposes the motion. Dkt. 95. On August 11, 2020, Mr. Norris replied. Dkt. 96. The Presentence Investigation Report was made available for review, with appropriate restrictions, as ordered, by the United States Probation Office, on November 3, 2020. Dkt. 98. The merits of the motion for compassionate release are now ripe for decision.

For the reasons set forth below, Mr. Norris's motion, dkt. [87], is **GRANTED**.

### I.
### BACKGROUND

In 2007, the Indianapolis Police Department obtained a warrant to search John Norris's

home after he had been observed on several occasions selling cocaine from his home or on the street outside his residence. *United States v. Norris*, Case No. 10-1612 (7th Cir. May 27, 2011) (final order and mandate). Mr. Norris was arrested at the scene and was found to be in possession of a firearm, which the police seized from him. *Id.* In 2009, Mr. Norris pled guilty to a single count of possession of a firearm by a convicted felon and being an Armed Career Criminal, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). Dkt. 44. Mr. Norris admitted that at the time of his arrest he had three prior convictions for either a violent felony or a serious drug offense. *Id.* Mr. Norris also stipulated that he possessed the firearm used in the crime in connection with dealing cocaine. *Id.*

Mr. Norris was 47 years old at the time he was sentenced. Dkt. 60 at 3. He had compiled an "extensive" criminal history, including burglaries at age 19 and age 23. *Id.* at 10. On March 10, 2010, Mr. Norris received an executed sentence of 172 months imprisonment followed by five years of supervised release. Dkt. 49.

Mr. Norris is currently 58 years old and incarcerated at FCI Ashland located in Ashland, Kentucky. He has served a total of 126 months with approximately one and one-half years remaining, that is, approximately 86% of his imposed sentence. His expected release date is July 2, 2022. As of November 6, 2020, FCI Ashland reported one active positive case of COVID-19 by an inmate and one affecting a staff person. Seven inmates and five staff members previously tested positive but have now recovered from COVID-19. www.bop.gov/coronavirus.

Prior to filing this motion for release, Mr. Norris requested that the Warden of FCI Ashland approve his compassionate release based on the risks he posed for acquiring COVID-19. More than thirty days passed after his request to the Warden without a response. Dkt. 93 at 21.

## II.
### DISCUSSION

Mr. Norris seeks an order authorizing his immediate release due to his heightened medical risk from COVID-19. He describes his medical conditions in light of his age as extraordinary and compelling reasons warranting his compassionate release. In addition, he maintains that he is not a danger to the community and that the sentencing factors in 18 U.S.C. § 3553(a) jointly and severally favor his release.

The Government opposes Mr. Norris's motion, arguing that he has not presented extraordinary and compelling circumstances justifying his release and that neither the factors in 18 U.S.C. § 3142(g) nor those set out in § 3553(a) favor his release. More specifically, the Government contends that his early release poses a risk of danger to the public and minimizes the seriousness of his offense conduct.

Title 18 U.S.C. § 3582(c) guides our analysis, providing in relevant part as follows:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Thus, the Sentencing Commission

promulgated a policy statement regarding compassionate release reflected at § 3581(c), set out in United States Sentencing Guidelines ("US.S.G.") § 1B1.13 and the accompanying Application Notes. That policy statement has not been updated to reflect that defendants (and not just the Bureau of Prisons) ("BOP") may move for compassionate release,[1] but courts have consistently relied on U.S.S.G. § 1B1.13 for guidance as to the "extraordinary and compelling reasons" that might warrant sentence reductions. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). Generally speaking, the identity of the movant (whether it is an inmate or the BOP) does not impact the Court's consideration of the applicable factors.

Pursuant to § 1B1.13 and the statutory directive in § 3582(c)(1)(A), the compassionate release decision is premised on certain specific findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Mr. Norris is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider and weigh the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### A. Extraordinary and Compelling Reasons

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions

---

[1] Until December 21, 2018, only the BOP could file a motion for sentence reduction under §3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended §3582(c)(1)(A) to allow inmates to bring such motions directly, after exhausting administrative remedies. *See* 1 Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (First Step Act § 603(b)).

from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision covering "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D).

Mr. Norris does not argue that subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question before us is whether the catchall provision addressing extraordinary and compelling reasons applies in this case. We conclude that it does.

In answering this question, we first address whether the Court or the BOP determines the qualifications for "extraordinary and compelling" reasons under the catchall provision. The majority of courts have concluded that the unrevised policy statement "provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3[58]2(c)(1)(A).'" *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). The original policy statement specifically provides that the Director of the BOP is charged with determining the circumstances that satisfy the catchall provision. *See* U.S.S.G. § 1B1.13, Application Note 1(D). Nonetheless, many courts have concluded that the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement" is a judicial determination. *Id.* at *6; *see also United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020); *but see United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala.

Aug. 13, 2019) (concluding that the court must follow the literal language of the old policy statement and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision). We side with those who view this determination as a judicial one.

Our analysis allows us to conclude that Mr. Norris has established extraordinary and compelling reasons warranting a sentence reduction based on his chronic kidney disease. Dkt. 93-1. In addition, according to the NIH's BMI Calculator (reflecting his height of six feet and weight of 234 pounds), Mr. Norris is classified as obese with a BMI Index of 31.7. Dkt. 93-1 at 11; dkt. 93 at 16; *see* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. Chronic kidney disease and obesity pose an increased risk of exacerbating the severity of COVID-19 symptoms. *See* http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions. In addition, Mr. Norris suffers from hypertension, dkt. 93-1 at 1, for which he has been prescribed medication to control high levels of cholesterol and blood pressure. *Id.* at 2-3. Hypertension is recognized as a condition that potentially increases the severity of COVID-19 symptoms. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions.

These conditions place Mr. Norris at high risk of experiencing serious complications if he contracted COVID-19, given his advanced age as well. The CDC has stated that "[a]s you get older, your risk for severe illness from COVID-19 increases." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. The prison setting also poses risks which are recognized by many courts as significantly higher when it comes to preventing and treating infection, exacerbating the instances as well as the duration of this disease. *See, e.g.*, *United States v. Zukerman*, No. 16-cr-194-AT, 2020 WL 1659880, at *5

(S.D.N.Y. Apr. 3, 2020) ("Given that inmates at Otisville live in close quarters, social distancing is impracticable if not impossible, make it difficult for Zukerman to protect himself from the spread of this dangerous and highly contagious virus."); *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *5 (E.D. Penn. May 4, 2020) ("Prisons are ill-equipped to prevent the spread of COVID-19. Many of the recommended measures to prevent infection are impossible or unfeasible in prison.").

Thus, we hold that Mr. Norris is at an increased risk of experiencing severe symptoms if he contracts COVID-19 largely because he cannot undertake appropriate measures to protect himself. The Government frequently concedes that having a CDC-identified COVID-19 risk factor satisfies the "extraordinary and compelling" prong of § 3582(c)(1)(A)(i), even when the defendant is not limited in providing self-care and, thus, does not qualify under subsection (A). *See, e.g.*, *United States v. Finan*, No. 1:17-cr-87-TWP-MJD-1, dkt. 145 at 13 (S.D. Ind. June 23, 2020) ("Therefore, because [the defendant] has established that he has a CDC-identified COVID-19 risk factor, the government does not contest that he has satisfied the 'extraordinary and compelling reason' prong of section 3582(c)(1)(A)(i)."); *United States v. Elmer,* No. 1:17-cr-113-JRS-TAB, dkt. 247 at 7 (S.D. Ind. June 17, 2020) ("[The defendant's] diabetes, during the COVID-19 pandemic, presents an extraordinary and compelling reason allowing for compassionate release.").

Because Mr. Norris's medical conditions place him at a high level of risk for serious complications from COVID-19 and because he is unable to take appropriate steps to protect himself while he is incarcerated, he has established extraordinary and compelling reasons warranting his release.

### B. Danger to Any Other Person or to the Community

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant should be detained pending trial. These same factors guide our release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Government asserts that Mr. Norris's early release from prison poses a danger to public safety. The Government notes that following release from a lengthy prison term when he was in his thirties, Mr. Norris returned to criminal conduct by trafficking in cocaine within a matter of a few months. Mr. Norris is now 58 years of age, having served approximately ten years in prison and suffering from chronic kidney disease, obesity, and hypertension. Whatever risks he presented

at the beginning of his criminal career have likely been reduced by dint of his age and health issues.

We acknowledge that Mr. Norris received a disciplinary write-up while incarcerated in July of 2019, having tested positive for marijuana. Dkt. 95-2. In addition, the BOP regards him as a high recidivism risk for reasons not explained to us and reports that as of 2017 he had "no interest" in participating in a drug abuse program. Dkt. 93-3 at 1. These circumstances admittedly erode our confidence somewhat. However, we note that Mr. Norris has completed more than twenty educational, vocational, and rehabilitative programs while incarcerated, dkt. 93-3, and that he has been given a low security classification, *id.*, having incurred only one disciplinary charge in more than ten years of incarceration, dkt. 95-2.

Further, Mr. Norris has presented a promising and viable release plan. He has indicated that he intends to reside with his sister in Indianapolis, Indiana, and will have financial support from his daughter. He also earned several operating licenses while in prison, which hopefully will help him find and maintain employment. These circumstances promise a level of stability that will facilitate his law-abiding re-entry to society with a peaceful assimilation into the community.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Norris does not pose a danger to any other person or the community if his sentence is reduced to time served to allow for his release and his term of supervised release of five years includes conditions requiring increased schedules of drug testing and home detention with GPS monitoring during the first year following his release and the commencement of supervised release.

### C.  Section 3553(a) Factors

The next factor in evaluating a motion for compassionate release is whether the seriousness of the § 3553(a) considerations outweighs the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the

original sentence. *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (granting compassionate release to 75-year-old securities fraud defendant after serving 13 years of 25-year sentence due to significant health issues). Here, we conclude that it does not. *See Cotton,* 2020 WL 3488752 at *4-5.

Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.—**The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>> **(2)** the need for the sentence imposed—
>>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> **(B)** to afford adequate deterrence to criminal conduct;
>>> **(C)** to protect the public from further crimes of the defendant; and
>>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> **(3)** the kinds of sentences available;
>> **(4)** the kinds of sentence[s] and the sentencing range established for--
>>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>>
>> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Government argues that Mr. Norris's early release would minimize the seriousness of his offense, not provide adequate deterrence, and not promote respect for the law. These concerns might weigh more heavily were it not for the fact that Mr. Norris is set to be released in one and a half years if this motion were denied. His ten years of incarceration are significant and serious by any measure. Hopefully, that decade will also deter him from future criminal conduct.

Mr. Norris has served approximately 126 months of his 172-month sentence. As we have noted, such a sentence represents a severe punishment. His educational successes reflect his intention and efforts to rehabilitate himself. That he will be on supervised release for five years and subject to increased drug monitoring as well as home detention with GPS monitoring during his first year following his release assuage some of our concerns. Presumably, he will be focused on meeting his various health challenges as well and avoiding the onset of COVID-19.

Accordingly, the Court determines that further incarceration is not necessary as the only deterrence to Mr. Norris from further offenses; nor, for the reasons described above, is it necessary to ensure the safety of the public from future crimes he might commit. Further incarceration would impose harshly excessive burdens on him beyond those that are necessary to satisfy the purposes of punishment, pursuant to § 3553(a)(2).

### III.
#### CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Norris's sentence and his immediate release from imprisonment, that Mr. Norris does not pose a danger to other persons or the community given the original and amended conditions of release, that a balance of the § 3553(a) factors redounds in favor of a reduction, and that such a reduction does not offend the Sentencing Commission's policy statements. Therefore, the Court **GRANTS** Mr. Norris's motion for compassionate release, dkt. [87], **ORDERS** that Mr. Norris's sentence of imprisonment be reduced forthwith to **time served as of November 13, 2020,** and further **ORDERS** the Bureau of Prisons to effect the release of Mr. Norris by **4:00 p.m. on November 13, 2020**. Counsel for the United States is **ORDERED** to transmit the AO248 Order to Mr. Norris's custodian within 24 hours following the docketing of the AO248 Order.

The terms of supervised release originally imposed in the Judgment and Commitment Order of March 10, 2010, remain in full force and effect, as well as the following additional conditions:

Mr. Norris is **ORDERED** to serve the first year of his supervised release on home detention with GPS monitoring; and

Special Condition #2 is **revised** to provide that Mr. Norris is **ORDERED** to "participate in a program of testing for substance abuse to include *at least* eight drug tests per month and shall pay a portion of the fees for testing." Dkt. 49 at 3. Further, "If Mr. Norris relapses in terms of his use of controlled substances, he may be required to participate in counseling and treatment programs as directed by the Probation Office."

Mr. Norris is **ORDERED** to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

IT IS SO ORDERED.

Date:      11/10/2020

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel